# EXHIBIT H

**David Poell**

| | |
|---|---|
| **From:** | David Poell |
| **Sent:** | Friday, January 15, 2021 4:24 PM |
| **To:** | 'cotrupem@seiu1.org' |
| **Cc:** | Kevin Cloutier; Kari Rollins |
| **Subject:** | Pasha McKenzie v. Digital Realty Management Services, LLC, No. 2020 CH 05661 (Ill. Cir. Ct.) -- Subpoena to SEIU Local 1 |
| **Attachments:** | Subpoena to Service Employees International Union, Local 1.pdf |

Dear Michele:

Thanks for your time today. As discussed, attached is a copy of the subpoena for documents issued to SEIU Local 1 in the above-captioned matter. Please confirm that you accept service on behalf of the union.

Please let me know if you have any questions or if you would like to discuss next week. Have a nice weekend.

Best,

**David Poell**
+1 312-499-6349 | direct
DPoell@sheppardmullin.com | Bio

**Sheppard**Mullin
70 West Madison Street, 48th Floor
Chicago, IL 60602-4498
+1 312-499-6300 | main
www.sheppardmullin.com | LinkedIn | Twitter

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Pasha McKenzie
_____
                                   **Plaintiff/Petitioner**

                    v.                               Case No.  _2020 CH 05661_____

Digital Realty Management Services, LLC
_____
                                   **Defendant/Respondent**

## SUBPOENA IN A CIVIL MATTER
### (For Testimony and/or Documents)

To:    Service Employees International Union, Local 1
         111 E. Wacker, Suite 1700
         Chicago, IL 60601

1.  ☐   YOU ARE COMMANDED to appear to give your testimony before the

       Honorable _____ in Room _____ ,

       _____ , Illinois on _____

       at _____   ○ AM   ○ PM

2.  ☐   YOU ARE COMMANDED to appear and give your deposition testimony before a Notary Public

       at: _____ in Room _____ ,

       _____ , Illinois on _____

       at _____   ○ AM   ○ PM

3.  YOU ARE COMMANDED to mail the following documents in your possession or control

    to _Sheppard Mullin Richter & Hampton LLP_ at _70 W. Madison St., 48th Floor, Chicago, IL 60602_ ,

    on or before __1/29/21__ at ____5:00____   ○ AM   ● PM
    (THIS IS FOR RECORDS ONLY.  THERE WILL BE NO ORAL INTERROGATORIES.):

     SEE ATTACHED "RIDER TO SUBPOENA"


    ☑   Description continued on attached page(s).

**Your failure to respond to this subpoena will subject you to punishment for contempt of this Court.**

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**

Notice to Deponent:

1. ☐   The deponent is a public or private corporation, partnership, association, or governmental agency. The matter(s) on which examination is requested are as follows:

_____

    ☐   Description continued on attached page(s).
       (A nonparty organization has a duty to designate one or more officers, directors, or managing agents, or other persons to testify on its behalf, and may set forth, for each person designated, the matters on which that person will testify. Ill. Sup. Ct. Rule 206.)

2. ☐   The deponent's testimony will be recorded by use of an audio-visual recording device, operated

    by _____ .
                 (Name of Recording Device Operator)

3. No discovery deposition of any party or witnesses shall exceed three hours regardless of the number of parties involved in the case, except by stipulation of the parties or by order upon showing that good cause warrants a lengthier examination. Ill. Sup. Ct. Rule 206(d).

● Atty. No.:  49795 _____
○ Pro Se 99500

Name:  David M. Poell _____

Atty. for (if applicable):                      Issued by: /s/ David M. Poell _____

Defendant _____
                                    Signature
                          ● Attorney  ○ Clerk of Court

Address:  70 W. Madison Street, 48th Floor ___

City:  Chicago _____      Date:  1/14/21 _____

State:  IL ___  Zip:  60602 _____

Telephone:  (312) 499-6349 _____

Primary Email:  dpoell@sheppardmullin.com _____

☐   I served this subpoena by mailing a copy, as required by Ill. Sup. Ct. Rules 11, 12 and 204(a) (2),

    to _____ by certified mail, return receipt requested

    (Receipt # _____) on _____ . I paid the witness $ _____ for witness and mileage fees.

☐   I served this subpoena by handing a copy to _____

    on _____ . I paid the witness $ _____ for witness and mileage fees.

/s/ _____   _____
           (Signature of Server)                    (Print Name)

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

# RIDER TO SUBPOENA

## DEFINITIONS AND INSTRUCTIONS

1.      The term "Action" shall refer to the lawsuit captioned *Pasha McKenzie v. Digital Realty Management Services, LLC*, which is pending in the Circuit Court of Cook County, Illinois (Chancery Division), Case No. 2020 CH 05661.  A copy of the complaint in the Action is attached to this Rider as Exhibit A.

2.      The term "Allied" shall mean Allied Universal Security Services, and includes, without limitation, all parents, subsidiaries, affiliates, divisions, predecessors, successors or assigns, and its and their respective officers, directors, shareholders, partners, members, employees, agents, accountants, advisors, contractors, representatives, and attorneys, and all persons who acted or purported to act on behalf of Allied.

3.      The term "Collective Bargaining Agreement" shall mean that certain Metropolitan Chicago Security Agreement Contractors agreement entered into between Allied and the Union, effective September 2, 2019 through September 1, 2022.

4.      The term "Digital Realty" shall mean Digital Realty Management Services, LLC, and includes, without limitation, all parents, subsidiaries, affiliates, divisions, predecessors, successors or assigns, and its and their respective officers, directors, shareholders, partners, members, employees, agents, accountants, advisors, contractors, representatives, and attorneys, and all persons who acted or purported to act on behalf of Digital Realty.

5.      The term "Illinois Allied Employee" shall mean any member of the Union who has been employed by Allied in the State of Illinois, for any period of time, during the Relevant Time Period.

6. The term "McKenzie" shall mean Pasha McKenzie – an individual, former employee of Allied, and the Plaintiff in the Action.

7. The term "Relevant Time Period" shall mean the period of time from September 1, 2015 to the date of service of this subpoena.

8. The term "Union" shall mean the Service Employees International Union, Local 1, and includes, without limitation, all affiliates, divisions, predecessors, successors or assigns, and its and their respective officers, directors, partners, members, delegates, employees, agents, accountants, advisors, contractors, representatives, and attorneys, and all persons who acted or purported to act on behalf of the Union.

9. The terms "You" and "Your" shall mean the Union.

10. The terms "all" and "any" shall mean both "each" and "every."

11. The terms "and," "or," and "and/or" are used herein in their general conjunctive sense and are not intended to limit the scope of any Requests. The terms shall be construed as broadly as necessary to bring within the scope of each Request all items that might otherwise be construed to be outside of its scope.

12. The term "Communication(s)" means any verbal conversation or written statement from one person to another, whether oral or written, including, but not limited to, any correspondence, e-mail, text, SMS message, instant message (including but not limited to What's App, Zoom, Skype, Google Chats, LinkedIn Messenger, Facebook Messenger, Snapchat, Slack, and Microsoft Teams), Social Media posting or comment (including, but not limited to, Facebook, Twitter, Instagram, YouTube, TikTok, LinkedIn, Tumblr, Reddit, and Snapchat), memorandum, interview, conference, meeting, or telephone conversation.

13.     The terms "concerning" or "relating to" mean referring to, describing, evidencing or consisting.

14.     The term "Document" is used in its broadest sense and means, without limiting the generality of its meaning, any drafts of or finalized written, typed, printed, recorded or graphic matter or data of any kind, however produced or reproduced, and all non-identical copies thereof, whether different because of notes made thereon or otherwise, including, but not limited to, and by way of example only: letters or other correspondence, messages, facsimiles, e-mails, chats or text messages, Facebook posts or messages, LinkedIn posts or messages, Slack messages, Zoom messages, Skype messages, Google Chats, Microsoft Teams communications, Twitter posts, Instagram posts, Tumblr posts, Reddit posts, Snapchat communications, Whats App messages, schedules, calendars, business plans relating to recruiting, hiring, or staffing plans for financial team, telephone records, invoices, minutes of meetings or conferences, transcripts of telephone conversations, checks (front and back), check stubs, receipts, photographs, advertisements, including computer data, computer diskettes or the memory units containing such data from which information can be obtained or translated into usable form.

15.     "Including" means including, but not limited to, the referenced subject.

16.     "Information" means information of any kind in any form whatsoever.

17.     "Person" means all natural persons, corporations, partnerships, limited partnerships, joint ventures, unincorporated associations, any other business association, government entities, and all other legal entities.

18.     The phrase "relating to" as used herein shall be interpreted broadly and shall include, but not be limited to, the following meanings: concerning, containing, regarding, recording, discussing, mentioning, noting, evidencing, supporting, memorializing, summarizing,

analyzing, describing, commenting upon, pertaining to and/or referring, in whole or in part, to the matters set forth.

19.     The use of the singular form of any word includes the plural and vice versa.

20.     All references made and all nouns and pronouns herein shall be construed in the singular or the plural and in such gender as the sense and circumstances require.

21.     <u>Continuing Requests</u>.  These requests are continuing ones.  If, after producing the requested documents, You obtain or become aware of any further documents responsive to this Request, You are required to produce such additional documents to Digital Realty.

22.     <u>Privileged or Proprietary Matters</u>.  In the event that any document is withheld on the basis of any legal objection or privilege, You shall indicate the following information for each such withheld document: (a) the date of the document; (b) the general character or type of document (i.e., letter, memorandum, notes of meeting, etc.); (c) the identity of the person in possession of the document; (d) the identity of the author of the document; (e) the identity of the original recipient or holder of the document; (f) the relationship of the author, addressee and any other recipient; (g) the general subject matter of the document; and (h) the legal basis, including, but not limited to, any legal objection or privilege for withholding the document.

23.     <u>Lost or Destroyed Documents</u>.  If any document which is the subject of these Requests was at one time in existence, but was subsequently lost, discarded, or destroyed, identify such document as completely as possible, including the following information:  (a) the type of document, (b) the date of document, (c) the date when the document became lost, discarded or destroyed, (d) the circumstances under which the document was lost, discarded or destroyed, and (e) the identity of all persons having knowledge of the contents of the document.

24. <u>Form of Production</u>. All documents shall be organized and labeled to correspond with the categories in the request. In this connection, and for purposes of illustration, all documents should be produced in the file folders and file cartons in which they have been maintained or stored, clipped, stapled or otherwise arranged in the same form and manner as they were found. If You choose to produce the document requested corresponding with the categories in the Request, You should identify the file folders, drawer or cartons in which the documents were originally maintained and the person or persons in whose custody or control such files are or were maintained.

25. <u>Partial Production</u>. If any of the documents cannot be produced in full, produce them to the extent possible, stating the reasons for Your inability to produce the remainder, stating whatever information, knowledge, or belief You have concerning the unproduced portion.

26. The time period covered by these requests, unless indicated otherwise in a specific request, is from September 1, 2015 through the service date of this subpoena.

## **<u>DOCUMENT REQUESTS</u>**

1. A copy of the Collective Bargaining Agreement.

2. Copies of all collective bargaining agreements between the Union and Allied relating to Illinois Allied Employees that have been effective during the Relevant Time Period.

3. Documents and Communications sufficient to determine whether McKenzie has been a member of the Union, including but not limited to, Your membership rolls listing all Illinois Allied Employees from October 1, 2019 through March 31, 2020.

4. Documents and Communications sufficient to determine whether McKenzie was subject to the terms of the Collective Bargaining Agreement.

5. Documents and Communications sufficient to determine whether the Collective Bargaining Agreement covered, addressed, determined or otherwise related to McKenzie's employment conditions during the time period she was employed by Allied, including but not limited to, employment conditions relating to McKenzie's wages, disciplinary procedures, grievance and arbitration procedures, workweek, and/or health insurance during the time period she was employed by Allied.

6. All Documents and Communications generated and/or exchanged between McKenzie and the Union during the Relevant Time Period, including but not limited to, any receipts or other Documents reflecting any union dues, initiation fees, and/or representation costs paid by McKenzie or deducted from McKenzie's paycheck as a condition of her employment.

7. Documents and Communication sufficient to identify all Illinois Allied Employees who have worked at any facility owned or operated by Digital Realty during the Relevant Time Period.

# EXHIBIT A

FILED
9/1/2020 1:55 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

FILED DATE: 9/1/2020 1:55 PM    2020CH05661

PASHA MCKENZIE individually and on
behalf of all others similarly situated,

        *Plaintiff,*

    v.

DIGITAL REALTY MANAGEMENT
SERVICES, LLC

        *Defendant.*

10304196

Case No.: 2020CH05661

## CLASS ACTION COMPLAINT

Plaintiff Pasha McKenzie ("Pasha" or "Plaintiff") brings this Class Action Complaint against Defendant Digital Realty Management Services, LLC., ("Digital" or "Defendant") to put a stop to its unlawful collection, use, and storage of Plaintiff's and the putative Class members' sensitive biometric data. Plaintiff, for Plaintiff's Class Action Complaint, alleges as follows upon personal knowledge as to Plaintiff's own acts and experiences and, as to all other matters, upon information and belief.

### NATURE OF THE ACTION

1.  Digital is a security company with over 200,000 employees and multiple locations nationwide. They currently have a Chicago, Illinois office.

2.  When employees first begin their jobs at Digital, they are required to scan their fingerprint to access the doors, instead of using only key fobs or other identification cards.

3.  While there are tremendous benefits to using biometric identifiers in the workplace, there are also serious risks. Unlike key fobs or identification cards—which can be changed or

FILED DATE: 9/1/2020 1:55 PM 2020CH05661

replaced if stolen or compromised—fingerprints are unique, permanent biometric identifiers associated with the employee. This exposes employees to serious and irreversible privacy risks. For example, if a fingerprint database is hacked, breached, or otherwise exposed, employees have no means by which to prevent identity theft and unauthorized tracking.

4. Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), specifically to regulate companies that collect and store Illinois citizens' biometrics, such as fingerprints.

5. Despite this law, Digital disregarded the statutorily protected privacy rights of persons required to use their biometric data for door access and unlawfully collects, stores, and uses their biometric data in violation of the BIPA. Specifically, Digital has violated (and continues to violate) the BIPA because it did not:

- Properly inform Plaintiff and the Class members in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by the BIPA;

- Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's fingerprints, as required by the BIPA; nor

- Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain fingerprints, as required by the BIPA.

6. Accordingly, this Complaint seeks an order: (i) declaring that Defendant's conduct violates the BIPA; (ii) requiring Defendant to cease the unlawful activities discussed herein; and (iii) awarding liquidated damages to Plaintiff and the proposed Class.

## PARTIES

7. Plaintiff is a natural person and citizen of the State of Illinois.

8. Defendant Digital is a Foreign Limited Liability Company, with its principal business location in Santa Ana, California.

FILED DATE: 9/1/2020 1:55 PM 2020CH05661

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over Defendant pursuant to 735 ILCS 5/2-209 because Defendant conducts business transactions in Illinois and have committed tortious acts in Illinois.

10.     Venue is proper in Cook County because Defendant operates throughout this County and "resides" in Cook County within the meaning of 735 ILCS § 5/2-102(a).

## FACTUAL BACKGROUND

### I.     The Biometric Information Privacy Act.

11.     In the early 2000's, major national corporations started using Chicago and other locations in Illinois to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(b). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing, yet unregulated technology. *See* 740 ILCS 14/5.

12.     In late 2007, a biometrics company called Pay By Touch—which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions—filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records—which, are unique biometric identifiers, can be linked to people's sensitive financial and personal data—could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that unique biometric identifiers could now be sold to unknown third parties.

3

FILED DATE: 9/1/2020 1:55 PM   2020CH05661

13.     Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted the BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

14.     The BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it *first*:

> (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information.

740 ILCS 14/15(b).

15.     BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

16.     Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and—most importantly here—fingerprints. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *See id.*

17.     The BIPA also establishes standards for how private entities must handle Illinois employees' biometric identifiers and biometric information. *See* 740 ILCS 14/15(c)–(d). For instance, the BIPA requires companies to develop and comply with a written policy—made

FILED DATE: 9/1/2020 1:55 PM   2020CH05661

available to the public—establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

18.     Ultimately, the BIPA is simply an informed consent statute. Its narrowly tailored provisions place no absolute bar on the collection, sending, transmitting or communicating of biometric data. For example, the BIPA does not limit what kinds of biometric data may be collected, sent, transmitted, or stored. Nor does the BIPA limit to whom biometric data may be collected, sent, transmitted, or stored. The BIPA simply mandates that entities wishing to engage in that conduct must make proper disclosures and implement certain reasonable safeguards.

## II.     Digital Violates the Biometric Information Privacy Act.

19.     By the time the BIPA passed through the Illinois Legislature in mid-2008, many companies who had experimented with using biometric data as an authentication method stopped doing so, at least for a time. That is because Pay By Touch's bankruptcy, described in Section I above, was widely publicized and brought attention to consumers' discomfort with the use of their biometric data.

20.     Unfortunately, Digital failed to take note of the passage of the BIPA even though it has been in effect for over a decade. As a result, Digital recklessly or willfully continued to collect, store, and use the biometric data of its employees and individuals who worked at its Chicago, Illinois in violation of the BIPA.

21.     Specifically, when individuals worked at Digital, they are required to have their fingerprints scanned in order to enter and exit through the doors in the building.

22.     Digital uses a digital door entry system that requires employees, and outside

5

FILED DATE: 9/1/2020 1:55 PM 2020CH05661

contractors, to use their fingerprints as a means of authentication. Unlike a traditional doors that use key or code access, individuals have to use their fingerprint to enter and exit the building and rooms throughout the facility.

23. Digital failed to inform its employees and other individuals, such as outside contractors, who worked at Digital's Chicago facility of the complete purposes for which it collects their sensitive biometric data or to whom the data is disclosed, if at all.

24. Digital similarly failed to provide its employees and other individuals who worked at Digital's Chicago facility with a written, publicly available policy identifying its retention schedule, and guidelines for permanently destroying their fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by the BIPA. An employee who leaves the company does so without any knowledge of when their biometric identifiers will be removed from Digital databases—or if they ever will be.

25. The Pay By Touch bankruptcy that catalyzed the passage of the BIPA highlights why conduct such as Digital's —whose employees are aware that they are providing biometric identifiers but are not aware of to whom or the full extent of the reasons they are doing so—is so dangerous. That bankruptcy spurred Illinois citizens and legislators to realize a critical point: it is crucial for people to understand when providing biometric data who exactly is collecting it, who it will be transmitted to, for what purposes, and for how long. But Digital disregards these obligations, and instead unlawfully collects, stores, and uses its employees' biometric identifiers and information without proper consent.

26. Ultimately, Digital disregards the statutorily protected privacy rights of individuals who work at its Illinois facilities by violating the BIPA.

## FACTS SPECIFIC TO PLAINTIFF

6

FILED DATE: 9/1/2020 1:55 PM 2020CH05661

27.     Plaintiff worked at Digital's Chicago, Illinois facility from November of 2019 to February of 2020.

28.     Digital required Plaintiff to scan Plaintiff's fingerprint so that it could use it as an authentication method to have access to the building. Digital subsequently stored Plaintiff's fingerprint data in its databases.

29.     Each time Plaintiff entered and exited the building, Digital required a scan of Plaintiff's fingerprints.

30.     Digital never informed Plaintiff of the specific limited purposes or length of time for which it collected, stored, or used fingerprints.

31.     Similarly, Digital never informed Plaintiff of any biometric data retention policy it developed, nor whether it will ever permanently delete fingerprints.

32.     Plaintiff never signed a written release allowing Digital to collect or store fingerprints.

33.     Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Digital violations of the BIPA alleged herein.

34.     Plaintiff now seeks liquidated damages under BIPA as compensation for the injuries Digital has caused.

## CLASS ALLEGATIONS

35.     **Class Definition**: Plaintiff brings this action pursuant to 735 ILCS 5/2-801 on behalf of Plaintiff and a Class of similarly situated individuals, defined as follows:

> All residents of the State of Illinois who had their fingerprints collected, captured, received, or otherwise obtained by Defendant while residing in Illinois.

The following people are excluded from the Class: (1) any Judge presiding over this action and members of their families; (2) Digital, Digital's subsidiaries, parents, successors, predecessors,

FILED DATE: 9/1/2020 1:55 PM   2020CH05661

and any entity in which the Defendant or its parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

36.   **Numerosity**: The exact number of Class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable. Digital has collected, captured, received, or otherwise obtained biometric identifiers or biometric information from at least hundreds of employees who fall into the definition of the Class. Ultimately, the Class members will be easily identified through Defendant's records.

37.   **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

   a)  whether Defendant collected, captured, or otherwise obtained Plaintiff's and the Class' biometric identifiers or biometric information;

   b)  whether Defendant properly informed Plaintiff and the Class of its purposes for collecting, using, and storing their biometric identifiers or biometric information;

   c)  whether Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff and the Class' biometric identifiers or biometric information;

   d)  whether Defendant has sold, leased, traded, or otherwise profited from Plaintiff and the Class's biometric identifiers or biometric information;

   e)  whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or

8

FILED DATE: 9/1/2020 1:55 PM    2020CH05661

within three years of their last interaction, whichever occurs first;

f)   whether Defendant complies with any such written policy (if one exists); and

g)   whether Defendant used Plaintiff and the Class' fingerprints to identify them.

38.   **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex litigation and class actions. Plaintiff have no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor their counsel have any interest adverse to those of the other members of the Class.

39.   **Appropriateness**: This class action is appropriate for certification because class proceedings are superior to all others available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Digital's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Digital's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in their Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

FILED DATE: 9/1/2020 1:55 PM    2020CH05661

**CAUSE OF ACTION**
**Violation of 740 ILCS 14/1, *et seq.***
**(On Behalf of Plaintiff and the Class)**

40.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

41.    The BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, the BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information...." 740 ILCS 14/15(b) (emphasis added).

42.    The BIPA also mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention (and—importantly—deletion) policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (*i.e.,* when the employment relationship ends); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

43.    Unfortunately, Digital fails to comply with these BIPA mandates.

44.    Digital qualifies as a "private entity" under the BIPA. *See* 740 ILCS 14/10.

45.    Plaintiff and the Class are individuals who had their "biometric identifiers" collected by Digital (in the form of their fingerprints), as explained in detail in Section II. *See* 740

ILCS 14/10.

FILED DATE: 9/12/2020 1:55 PM    2020CH05661

46. Plaintiff and the Class' biometric identifiers or information based on those biometric identifiers were used to identify them, constituting "biometric information" as defined by the BIPA. *See* 740 ILCS 14/10.

47. Digital violated 740 ILCS 14/15(b)(3) by failing to obtain written releases from Plaintiff and the Class before it collected, used, and stored their biometric identifiers and biometric information.

48. Digital violated 740 ILCS 14/15(b)(1) by failing to inform Plaintiff and the Class in writing that their biometric identifiers and biometric information were being collected and stored.

49. Digital violated 740 ILCS 14/15(b)(2) by failing to inform Plaintiff and the Class in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored, and used.

50. Digital violated 740 ILCS 14/15(a) by failing to publicly provide a retention schedule or guideline for permanently destroying its employees' biometric identifiers and biometric information.

51. By collecting, storing, and using Plaintiff's and the Class' biometric identifiers and biometric information as described herein, Digital violated Plaintiff's and the Class' rights to privacy in their biometric identifiers or biometric information as set forth in the BIPA, 740 ILCS 14/1, *et seq*.

52. On behalf of themselves and the Class, Plaintiff seek: (1) injunctive and equitable relief as is necessary to protect the interests of the Plaintiff and the Class by requiring Defendant's to comply with the BIPA's requirements for the collection, storage, and use of biometric identifiers

FILED DATE: 9/1/2020 1:55 PM    2020CH05661

and biometric information as described herein; (2) liquidated damages for each of Defendant's violations of the BIPA pursuant to 740 ILCS 14/20; and (3) reasonable attorneys' fees and costs and expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Class, respectfully requests that the Court enter an Order:

A.    Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as representative of the Class, and appointing their counsel as Class Counsel;

B.    Declaring that Defendant's actions, as set out above, violate the BIPA;

C.    Awarding statutory damages for each of Defendant's violations of the BIPA, pursuant to 740 ILCS 14/20;

D.    Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including an Order requiring Defendant to collect, store, and use biometric identifiers or biometric information in compliance with the BIPA;

F.    Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

G.    Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

H.    Awarding such other and further relief as equity and justice may require.

Dated: September 1, 2020

Respectfully submitted,

**Pasha McKenzie, individually and on behalf of all others similarly situated,**

By: /s/ Mara Baltabols
        One of Plaintiff's Attorneys

David Fish
dfish@fishlawfirm.com
Mara Baltabols
mara@fishlawfirm.com
THE FISH LAW FIRM, P.C.
200 East Fifth Avenue, Suite 123
Naperville, Illinois 60563
Tel: 630.355.7590
Fax: 630.778.0400
Cook Cnty #: 44086
docketing@fishlawfirm.com

FILED DATE: 9/1/2020 1:55 PM   2020CH05661